#### FOR THE

## COUNTY OF LAMOILLE.

### April Term, 1848.

---

PRESENT,

Hon. ISAAC F. REDFIELD,
Hon. MILO L. BENNETT, } Assistant Judges.
Hon. CHARLES DAVIS,

---

### Harrison M. Vilas v. George W. Barker.

An action on the case will lie against a sheriff, for refusing to assign to the creditor, upon request, after breach of condition, a jail bond, taken upon admitting the debtor to the liberties of the prison.

And where such bond was taken upon the commitment of the debtor upon *mesne* process, it is no excuse for the sheriff, for refusing to assign the bond, that, during the pendency of the suit in which the bond was taken, the plaintiff caused his declaration to be amended, by leave of court, by adding an additional count, for a new and distinct cause of action, and that his judgment was rendered for a sum in damages founded upon claims embraced in both counts. The surety in the bond can alone insist upon such matter in avoidance of the bond.

Neither is it any answer to an action against a sheriff for an escape of a debtor committed on *mesne* process, that the creditor, while the suit was pending, procured an amendment of his declaration, which entitled him to enhanced damages; but the creditor is at least entitled to recover against the sheriff to the extent to which he would have held him, if no amendment had been made.

Vilas *v.* Barker.

Trespass on the case against the defendant, as sheriff of Washington county. The declaration contained two counts,—the first for not assigning to the plaintiff, upon request, a jail bond signed by James P. Pike and B. W. Poor,—the second for *negligently* permitting said Pike to escape after he had been committed *to jail in* Washington county upon a writ in favor of the plaintiff. The parties submitted the case to the court upon a statement of facts substantially as follows.

On the 17th of July, 1844, the plaintiff prayed out a writ of attachment against the body of James P. Pike, returnable before a justice of the peace, directed to any sheriff or constable in the state, and with a declaration in one count for goods, &c. sold and delivered; and the plaintiff at the same time filed with the justice, who signed the writ, an affidavit, in due form of law, that he believed Pike was about to abscond and had property secreted. This writ, on the 20th of July, was delivered to the defendant, who was then sheriff of Washington county, to serve and return, and he served it at Montpelier, on the same day, by arresting the body of Pike and committing him to the jail in Washington county, and made due return of the process. The same day the defendant received a jail bond, signed by Pike as principal and by B. W. Poor as surety, and admitted Pike to the liberties of the prison, and Pike, on the same day, departed from the liberties of the prison, without being in any manner discharged from his commitment. The suit against Pike was continued from time to time until the 8th of October, 1844, when it was tried by jury, the plaintiff first obtaining leave to amend his declaration by adding a count for money had and received; and the jury returned a special verdict in favor of the plaintiff for thirty five dollars,—five dollars being upon the count for money had and received, and thirty dollars upon the original count for goods, &c. sold and delivered, and judgment was rendered for the whole sum. The defendant appealed, and the suit was entered in the county court; but the defendant was subsequently defaulted, and judgment was rendered for the plaintiff to recover the sum of thirty five dollars, found by the jury at the justice's court, and his costs. Within fifteen days after the judgment was rendered in the county court the plaintiff took out execution thereon, dated June 18, 1845, and, on the 30th of June, delivered it to the defendant, who was then sheriff,

to collect and return. The defendant demanded of the jailor the body of Pike, July 7, 1845, and the jailor neglecting to deliver the same, the defendant, on the same day, returned the execution to the office of the clerk of the county court, with a return of *non est inventus* indorsed thereon. When Pike departed from the prison, he had no property, but was poor; and previous to the commencement of this suit the plaintiff demanded of the defendant an assignment of the jail bond,—which was refused.

Upon these facts the county court, December Term, 1847,—DAVIS, J., presiding,—rendered judgment for the defendant. Exceptions by plaintiff.

*W. W. White* for plaintiff.

The amendment made before the justice by the addition of a new count for another cause of action, not inconsistent with the form of the action or the jurisdiction of the court, was a matter resting in the sound discretion of the court, and is not subject to revision in a collateral manner. The sheriff, when sued for an escape, cannot allege error, either in the process, or judgment; and even if there were any irregularity in the proceedings previous to the rendition of final judgment, he cannot avail himself of this in a collateral action. 1 Aik. 339. *Bissell* v. *Kip*, 5 Johns. 89. 2 Saund. R. 101 *y.* *Bentley* v. *Donelly et al.*, 8 T. R. 127. *Bull* v. *Steward*, 1 Wils. 255. *Cable* v. *Cooper*, 15 Johns. 152. The addition of a new count for another cause of action, when allowed by the court, and a recovery *in part* upon such new count, does not, of itself, discharge the sheriff, or even bail, where the verdict and judgment show with certainty the extent of their liability upon the original declaration. The recovery upon the new count does not increase the sheriff's liability; but he retains the debtor in custody, subject to all legal claims, which the creditor may have, and which may be legally embraced in the judgment.

By the provisions of the statute,—Rev. St. 456, § 18,—when a person, committed to jail on *mesne* process, has been admitted to the liberties of the jail yard on giving a bond, and the bond has been broken, the same " shall be assignable to the creditor," who may maintain an action thereon in his own name. An action can be sustained by the creditor against the sheriff, for refusing to assign

such bond, when a demand has been made. *Simmons* v. *Bradford*, 15 Mass. 82. *Heppel* v. *King*, 7 T. R. 370.

*L. P. Poland* for defendant.

1. No action will lie against a sheriff, for refusing to assign a jail bond to the execution creditor. The statute does not impose any such obligation upon him, and, from the 20th section of chapter 103 of the Revised Statutes, it is perfectly evident, that the legislature intended to leave it at the option of the sheriff, whether to assign his security to the creditor, or not.

2. If the plaintiff by his own act had discharged the bail, it is very clear, that no action could be maintained by him against the sheriff for refusing to assign the bail bond, and quite as clear, that he could have no claim upon the sheriff for an escape.

3. That any amendment of a declaration, whereby the liability of the bail is increased, or a new cause of action is introduced, will discharge bail, and also attachments, as against persons having an intermediate interest in the property, is settled beyond dispute,— and this, too, without the intervention of any order or rule of court for that purpose. *Miller* v. *Clark*, 8 Pick. 412. *Ball* v. *Claflin*, 5 Ib. 303. *Haven* v. *Snow*, 14 Ib. 28. *Levett* v. *Kibblewhite*, 1 E. C. L. 459. *Wright* v. *Brownell*, 3 Vt. 435. *Aiken* v. *Richardson*, 15 Ib. 500. *Willis* v. *Crooker*, 1 Pick. 204. *Mason* v. *Waite*, 1 Ib. 452. *Brigham* v. *Este*, 2 Ib. 425. *Seely* v. *Brown*, 14 Ib. 177. *Danielson* v. *Andrews*, 1 Ib. 156. *Fairfield* v. *Baldwin*, 12 Ib. 388. *Putnam* v. *Hall*, 3 Ib. 445.

The opinion of the court was delivered by

DAVIS, J. The plaintiff's declaration contains two counts ; one for not assigning to the plaintiff, upon due demand, after breach, the jail bond taken by the defendant, as sheriff of Washington county, on the commitment of one Pike, a debtor of the plaintiff, to jail on *mesne process,*—which bond was executed by Pike as principal and one Poor as surety, was in the common form, and was broken by the departure of the principal, immediately after the execution thereof; the second count is for a negligent escape. The facts are fully presented in a case stated and agreed to by counsel. If, under either count, they warrant a recovery for the plaintiff to any amount, the judgment of the county court must be set aside.

Vilas *v.* Barker.

In respect to the first count I would observe, that although our statute does not, in express terms, give an action in such case, nor even declare, in direct terms, that it shall be the duty of the sheriff to make the assignment; yet I have no doubt, it is his duty,—a failure to perform which, upon common law principles, will subject him to an action. In England a bail bond, taken by the sheriff for the appearance of the defendant, is made assignable by statute; 4 Anne, c. 16, § 20; and though no action is expressly given for refusing to assign, yet it is held, that an action lies in such case; 7 T. R. 122. The statute of Anne is more explicit than ours, inasmuch as it declares it to be the duty of the sheriff to assign; whereas the statute of this state simply declares the bond to be assignable,— which, on common law principles, it would not be. This difference in phraseology, however, affords no ground for distinction as to the rights of the creditor, or the duty and responsibility of the officer. The farther provision, exempting the latter from liability for an escape, or for other cause, in the event of his making the assignment, unless the former shall fail to recover judgment thereon and obtain satisfaction by reason of error in the bond or poverty of the sureties, has no bearing upon the extent of liability in case of refusal to assign.

There are other considerations, connected with the subject, which show the propriety and necessity of a remedy in this form. A creditor, suing as assignee, is entitled to recover the full amount of his debt and interest thereon, whatever may be the circumstances and ability of his debtor, the principal in the bond. In the action for an escape, as in all actions of the case in tort, the damages are open and uncertain, depending upon no fixed irrefragable rule. Sedgw. on Meas. of Damages, ch. 21. *Stevens v. Rowe*, 3 Denio 327. The creditor is not, upon common law principles, entitled to recover the full amount of his debt, unless it should be shown, that he necessarily, or probably, lost the whole by reason of the escape. In New York and this state the statutes prescribe no definite rule, by which the damages are to be ascertained. In final process, BEARDSLEY, J., in the case cited from Denio, lays down the rule, that the sheriff is *prima facie* responsible for the whole debt, but the defendant may shew affirmatively, that the debt is collectable of the debtor. In England, as stated by Sedgwick, he is only *prima facie* respon-

sible for nominal damages. Whatever further damages may have been sustained, it is incumbent on the plaintiff to prove. Besides, our statute, in all actions of that kind against the jail keeper, permits him to show, on trial, the circumstances of the escape and the situation and property of the prisoner, and limits the recovery to the actual damages sustained.

It is manifest, that, by refusing to allow to the creditor the just advantages to which he is entitled on breach of the bond, great injustice might be done to him, and besides, such a principle might open a door to collusion between the jailor and the debtor. Only in this form is an adequate remedy provided for the injury sustained. If a bond have been taken on *mesne* or final process, it is not merely for the security of the jail keeper, but for the ease of the prisoner, and the benefit of the creditor. In order that the latter may avail himself of that benefit, the quality of negotiability is, by legislative enactment, stamped upon an instrument not otherwise possessing that quality. If such officer, without adequate excuse, will take upon himself to interpose between the creditor and the sureties, who have undertaken to pay the debt upon certain contingencies, he justly makes himself responsible to an extent equal to that of the sureties. A count, therefore, intended to enforce this principle, must necessarily state the taking of a bond, the breach, and the refusal, upon proper demand, to assign. None of these circumstances, except the departure of the prisoner, would be pertinent, or proper, under a count for an escape,—which supposes that, no bond was taken. The case of *Simmons* v. *Bradford*, 15 Mass. 84, fully recognizes the principle above adverted to, in respect to the extent, to which an officer in such case ought to be made responsible, and *seems* to justify the mode here adopted of carrying the principle into effect. The case, however, does not clearly disclose the nature of the declaration there adopted; but it may be inferred from the observations of counsel, as well as from the line of defence which the defendant proposed to adopt, which, however, the court refused to allow, that the action was for refusing to assign the bail bond, which the return showed had been taken. The officer had not taken, in that case, such a bond, as the statute required him to take, that is, with surety; he had taken simply the obligation of the principal; and this he offered to assign or deliver to the plaintiff, which

the latter refused to receive. The defendant was held to be liable to the same extent the bail would have been liable, had a regular bail bond been taken. A similar principle was applied to the case of an attachment against the sheriff for not bringing in the body, from which the sheriff was only relieved upon paying the full sum in debt and costs. *Heppel* v. *King*, 7 T. R. 370.

The question, then, arises, had the defendant any valid excuse for not assigning the bond, which was regularly and properly taken with surety? He insists, that it was rendered wholly unavailable, so far as the surety is concerned, by the plaintiff's own act in procuring an additional count to be added to his writ, on the day of trial, for a different and distinct cause of action from that contained in it at the time of the original service, and when the bond was taken; and that for that reason he could sustain no damage for not being permitted to put in suit an instrument, on which no recovery could be had.

I do not doubt at all the position, that Poor, the surety, if sued upon the bond, might avail himself of this attempt of the plaintiff to hold him responsible beyond the extent of his stipulation, and avoid the contract entirely. The obligation is entire, and not divisible, and any attempt to extend its scope and object would have the same effect, as an attempt to enlarge the amount of a note by the holder, after execution and delivery,—it would avoid it altogether. The authorities cited are quite sufficient to place this point beyond controversy. This defence, however, is personal to the surety alone, and can only be made available by being properly brought forward by plea, supported by competent proof. It is one, of course, which he may waive. The bond retains its legal validity until impeached, and this can only be done by a party to it, or his legal representative. The sheriff is in no sense the representative of the surety, and is not entitled to the privileges of a surety. He can set up no defence appertaining to that relation alone. The bond is not void; no defect exists in it, or is apparent upon its face, by reason of which the court will judicially interfere and refuse to render a judgment upon it. It is perfect in form, taken in pursuance of law, and, on proper assignment, with proof of a breach of the condition and of the judgment, the creditor would be entitled to recover, unless some new and independent matter were interposed in defence.

Such matter may exist, which will avail to exonerate one obligor and not the other. In that case judgment would pass against the party not exonerated. In the present case, I suppose the bond was in no way impaired by the amendment of the writ, as against Pike, the principal. It was made in pursuance of known laws and usages, and may have been within the reasonable contemplation of the defendant in the action.

Had the bond been assigned, as it ought to have been, then, there is nothing in the case, which authorizes us to assume, that the plaintiff would not have recovered the amount due him against both the principal and his bail. Whether he would, or not, depends upon a contingency, in respect to which we can predicate nothing. It follows, that the argument, based upon the idea that the defendant was required to do an act, which would be but an idle and useless ceremony, carrying with it no advantage to the party, in whose favor it was done, is entirely without foundation.

The distinction between this case and that of *Aiken* v. *Richardson*, 15 Vt. 500, is sufficiently obvious. Bail, who had indorsed the plaintiff's writ, was excused from surrendering the principal, on the ground that the original arrest was illegal and void. A surrender was held to be useless, when the court would determine, that it could not be followed by ulterior proceedings against the body of the principal. There is wanting in this case an essential element in those and similar defences, which from the nature of the subject, it is impossible for the defendant to supply.

Viewing this case independently of the bond which was taken, and the incidents which followed, as it is presented by the second count, it seems to me, that the plaintiff's right to recover damages to some extent is placed in even a stronger point of light, than in the view I have already taken. In this aspect the question is simply reduced to this, is the jail keeper, having in custody a prisoner, lawfully committed on *mesne* process, to be held until charged in execution, or until legally discharged, justified in opening the prison doors and voluntarily permitting his prisoner to escape, upon the ground that the plaintiff in the process, in accordance with law and the rules of court, has, subsequent to the commitment, added new counts to his declaration, enlarging the limits of his claim? If the affirmative of this proposition can be maintained, it would seem to

follow, that, upon the like occurrence, any personal property, that may have been attached and held by the officer, may be surrendered to the debtor. On the same ground, an attachment of real estate may be treated as vacated and the lien lost. In short, while, as between the direct parties, the suit proceeds to its final termination, as if no amendment had been made, yet, for every beneficial collateral purpose, the plaintiff is to be deemed to have, in effect, discontinued his action. There is certainly no authority for so extravagant a position. There are, indeed, reasons, why a sheriff, for a fact done or omitted, should not be subjected to more extended responsibilities, by means of any subsequent acts of the party entitled to take advantage thereof, equally cogent with those which operate to discharge bail.

The jail-keeper, by suffering the prisoner to depart without exacting the prescribed indemnity by bond, may, as respects the creditor, be supposed to have voluntarily assumed upon himself the same responsibilities, which would attach to bail regularly taken, as remarked by JACKSON, J., in *Simmons* v. *Bradford*,—not, indeed, in the same form, but to the same extent. The probable extent of these can only be determined by the statement of the claims, as set forth in the declaration. To allow them to be enlarged afterwards by amendment, which would admit new matter, not before admissible, would produce the same injustice in such case, as against technical bail. But there is one important distinction in the two cases to be noticed. There is not, in the action of case against the officer, the same reason for exempting him from the liability he justly incurred, provided it is practicable to separate and ascertain the extent of that. The jury, by their verdict here, have made that practicable, as the damages apportioned to each count are definitely stated. In the other case the action is upon a definite contract, the subject matter of which is referred to and in effect becomes a part of the contract, and any material alterations in either, by the party in whose favor it is made, by a principle well understood, invalidates the contract altogether. It is an entire security, not susceptible of being made void in part, while the rest remains operative.

We perceive, therefore, no good reason for denying to the plaintiff the same measure of damages, to which he would have been entitled, had no additional count been filed. As to costs, if this state of

things should require any modification of the usual rules of taxation, it is competent for the county court, in the exercise of a sound discretion, to make it.

The judgment of the county court is reversed. The plaintiff is entitled to judgment, upon the case stated; but, as it does not disclose all the facts, which may be material in determining the just measure of damages, the case is remitted to that court for farther action.